UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARNELL AUSTIN, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>DOORDASH, INC.,<br><br>        Defendant. | Case No. 1:17-cv-12498-IT |

## DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING *EPIC SYSTEMS V. LEWIS*

Defendant DoorDash, Inc. ("DoorDash") respectfully submits this supplemental brief in support of its Motion to Compel Arbitration, pursuant to this Court's order dated May 18, 2018 (Dkt. No. 32). As explained below, the Supreme Court's decision in *Epic Systems Corp. v. Lewis*, No. 16-285 (May 21, 2018) (*"Epic Systems"*) confirms that the Court must order Plaintiff Darnell Austin ("Plaintiff") to individual arbitration in accordance with the parties' Arbitration Agreement and the Federal Arbitration Act's ("FAA") mandate favoring arbitration of disputes.

### A. *Epic Systems* Obviates Plaintiff's Challenge to the Class Action Waiver

As Plaintiff's supplemental brief concedes, the Supreme Court's holding in *Epic Systems* leaves no doubt that the class action waiver contained in the parties' Arbitration Agreement is valid and enforceable under the FAA.

*Epic Systems* further underscores that: (1) individual arbitration should be compelled under the FAA, because the FAA's Section 1 exemption should not be interpreted as the expansive loophole for which Plaintiff argues; and, (2) alternatively, even if Massachusetts law applied, Plaintiff fails to meet the significant burden of showing that Massachusetts public policy would support such a huge deviation between the interpretation of the Massachusetts Arbitration Act ("MAA") and interpretation of the FAA provided in *Epic Systems*. Accordingly, this Court

should honor the parties' intent, enforce the class action waiver, and compel this dispute to individual arbitration according to its terms. *See Epic Systems*, Slip Op. at 2 ("In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."); *id*. at 24 ("the question before us is whether courts must enforce particular arbitration agreements according to their terms").

### B.      The FAA's Section 1 Exemption Does Not Apply

In addition to eliminating Plaintiff's attack against the class action waiver under the FAA, *Epic Systems* reaffirmed what the Supreme Court has held for decades: the FAA reflects a "liberal federal policy favoring arbitration agreements." *Epic Systems*, Slip Op. at 5. And this decision is consistent with the Supreme Court's explicit instruction to interpret the Section 1 exemption narrowly. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). For the reasons set forth in DoorDash's Reply, the local restaurant meal delivery drivers at issue in this case are not sufficiently engaged in interstate commerce to meet this limited exemption. As discussed during the hearing on the instant motion, the meals transported here – which are prepared at restaurants and delivered locally – are akin to milk that travels interstate and is then transformed into ice cream prior to local delivery; in such case, the "flow of commerce" is deemed interrupted once the "raw materials from other states come to rest" and are transformed into a new product. *Central Ice Cream Co. v. Golden Rod Ice Cream Co.*, 153 F. Supp. 684, 687 (N.D. Ill. 1957) (analyzing "in commerce" requirement of Robinson-Patman Act); *cf. McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943) ("[H]andlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are

not.").

Courts have uniformly declined to apply the narrow Section 1 exemption where, as here, the drivers at issue handled quintessentially local products and did not regularly cross any state lines. *See, e.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1153 (N.D. Cal. 2015) (rejecting plaintiff's argument that he and other food delivery couriers served as the "final step in the flow of food items in interstate commerce"); *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at *3 (N.D. Cal. Mar. 14, 2016) (couriers who delivered delayed luggage to airline passengers not exempt under Section 1); *Veliz v. Cintas Corp.*, 2004 WL 2452851, at *3 (N.D. Cal. Apr. 5, 2004) (employees who delivered and retrieved commercial laundry supplies locally not engaged in interstate commerce). Plaintiff has failed to provide a coherent explanation – or a single analogous case – to support the proposition that restaurant meals that are prepared, delivered, and consumed *locally* are part of the same interstate journey as the ingredients that comprise them. Plaintiff's attempt to avoid the otherwise valid arbitration agreement he entered into by shoehorning local delivery drivers into this explicitly narrow FAA exemption is (1) unsupported by the case law interpreting the FAA's Section 1 and (2) entirely inconsistent with the Supreme Court's string of decisions, most recently *Epic Systems*, that the FAA "establishes a liberal policy favoring arbitration agreements." *Epic Systems*, Slip Op. at 5.

Thus, the Court should conclude that the FAA applies to the parties' Arbitration Agreement and order Plaintiff to pursue his claims against DoorDash in individual arbitration. *See Richemond v. Uber Techs., Inc.*, 263 F. Supp. 3d 1312, 1317 (S.D. Fla. 2017) ("[T]he Arbitrator is responsible for deciding the threshold issue of whether [plaintiff's] relationship with Uber is that of an employee or an independent contractor.").

C.     **Even If Massachusetts Law Applied Here, The Arbitration Agreement Is Enforceable**

If the Court were to conclude that delivery drivers who use DoorDash's app *are* engaged in interstate commerce under the Section 1 exemption, the decision as to whether Plaintiff's Arbitration Agreement is a "contract of employment" under Section 1 of the FAA should be decided in the first instance in arbitration, as the parties delegated that threshold issue to the arbitrator. That said, DoorDash recognizes that the question of who decides the applicability of Section 1, as well as the question regarding the scope of "contracts of employment," were decided in *Oliveira v. New Prime, Inc.*, 857 F.3d 7 (1st Cir. 2017), which is now before the Supreme Court. DoorDash proposes that this Court allow these issues to be decided by the Supreme Court when it decides the *Oliveira* appeal. *See, e.g.*, *Rittmann et al. v. Amazon.com Inc. et al.*, No. 16-cv-01554 (W.D. Wash. March 22, 2017) (granting defendants' motion to stay where "the issue of how to determine whether independent contractors have a 'contract of employment' under 9 U.S.C. §1 is currently on appeal to the Ninth Circuit"). Alternatively, if the Court chooses to proceed and follow the First Circuit's decision in *Oliveira*, the Court would not need to wade into the waters of the ultimate worker classification question because under *Oliveira* "contracts of employment" include both independent contractors and employees, a conclusion with which this Court expressed agreement at the hearing.[1] At that point, the Court's decision regarding the enforceability of the class action waiver would rest on whether the waiver is valid under the MAA.

---

[1] Indeed, for the Court to determine the classification issue for the sole purpose of determining arbitrability of the claim would lead to the absurd result of the Court deciding the ultimate issue in the matter for the purpose of determining whether an arbitrator should decide such issue; such process would arguably render the arbitration moot or, at a minimum, risk conflicting outcomes.

The MAA and the FAA contain nearly identical mandates that put arbitration agreements on an equal footing with other contracts. *See Warfield v. Beth Israel Deaconess Med. Ctr., Inc.*, 454 Mass. 390, 394 (2009). Both statutes require enforcement of arbitration agreements on their terms, except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Mass. Gen. Laws ch. 251 §1. The consistency of the construction and interpretation of the MAA and the FAA places a significant burden on Plaintiff to show that, despite the ruling in *Epic Systems* upholding a *mandatory* class action waiver in an arbitration agreement, the voluntary class action waiver at issue here would be struck down under the MAA.[2] *See Warfield*, 454 Mass. at 394 ("In all relevant respects, the language of the FAA and the MAA providing for enforcement of arbitration provisions are similar, and we have interpreted the cognate provisions in the same manner."); *Mullally v. Waste Mgmt. of Mass., Inc.*, 452 Mass. 526, 531 (2008) (where provision in state statute (Massachusetts Wage Act) was "intended to be 'essentially identical'" to federal statute (FLSA), the SJC will "ascribe the legislative purposes underlying" the federal statute to such provision); *Poirier v. Superior Court,* 337 Mass. 522, 527 (1958) ("The adjudged construction by the Federal courts is to be given to the subsequent enactment by the Legislature").

Plaintiff argues that Massachusetts has such a strongly rooted public policy against class action waivers that, despite the MAA's near identical mandate and case law interpreting it and the FAA consistently, class action waivers that would be upheld under the FAA would be struck down under the MAA. Plaintiff has failed to meet that substantial burden.

---

[2] Plaintiff claims that Massachusetts public policy against class waivers is so strong as to strike down a *voluntary* class action waiver not only despite *Epic Systems'* validation of  mandatory class action waivers, but also *without citing to a single case in which a Massachusetts court struck down a voluntary class action waiver on public policy grounds.*

A fair reading of the two cases upon which Plaintiff relies reveals that the Supreme Judicial Court has not articulated some vast and rigid public policy banning class action waivers in their entirety. *See Feeney v. Dell, Inc.*, 454 Mass. 192 (2008); *Machado v. System4 LLC*, 465 Mass. 508, 514 (2013). Rather, the SJC has simply interpreted class action waivers to be unenforceable in the narrow context of extremely small-value claims that cannot be effectively vindicated in the absence of class action procedures—circumstances not present here.[3] Notably, it is *Plaintiff's* burden to prove that the claims at issue here fall within this narrow context—yet he has made no showing in this regard whatsoever. Instead, Plaintiff argues that arbitration agreements with class action waivers are per se unlawful—a position that finds no support in the case law.

Indeed, both *Feeney* and *Machado* were decided before the recent string of Supreme Court decisions upholding class action waivers in multiple contexts—most forcefully in *Epic Systems*. In fact, the Court in *Epic Systems* specifically rejected the reasoning in *Machado* that the wage and hour collective action procedure is inconsistent with a class action waiver:

> [I]t's altogether unclear why the dissent expects to find such a right in the NLRA rather than in statutes like the FLSA that actually regulate wages and hours. Or why we should read the NLRA as mandating the availability of class or collective actions when the FLSA expressly authorizes them yet allows parties to contract for bilateral arbitration instead.

*Epic Systems*, Slip Op. at 24. With the benefit of the Supreme Court's most recent decision in a line of cases interpreting a federal law that is substantively identical to Massachusetts law, there is no reason to believe the SJC would adopt the extreme construction urged by Plaintiff here.

---

[3] Indeed, it would have been simple for the SJC to state that, as a matter of Massachusetts public policy, class action waivers are void, were that its intent. Instead, however, the Court's holding was much narrower.

Respectfully submitted,

DOORDASH, INC.,

By its attorneys,

/s/ Michael Mankes
Michael Mankes (BBO No. 662127)
Francis J. Bingham (BBO No. 682502)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, Massachusetts 02110
(T) (617) 378.6000
(F) (617) 737.0052
mmankes@littler.com
Dated: June 4, 2018                    fbingham@littler.com

## CERTIFICATE OF SERVICE

I, Michael Mankes, hereby certify that on this 4th day of June, 2018, the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ Michael Mankes
Michael Mankes