UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARNELL AUSTIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOORDASH, INC.,<br><br>Defendant. | *<br>*<br>*<br>*<br>*  Civil Action No. 1:17-cv-12498-IT<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM AND ORDER

September 30, 2019

TALWANI, D.J.

Plaintiff Darnell Austin brings claims under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 148B; Mass. Gen. Laws ch. 151, §§ 1, 7, arising from Defendant DoorDash, Inc.'s alleged failure to pay Plaintiff minimum wage and overtime. Defendant moved to dismiss and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. Mot. to Dismiss and Compel Arbitration [#5]. For the following reasons, Defendant's Motion to Dismiss and Compel Arbitration [#5] is ALLOWED.

I.     Factual Background

Defendant is a food delivery service that provides services throughout the country via an on-demand dispatch system. Compl. at ¶ 5. Customers may request food delivery by using Defendant's mobile application or website. Id. After a customer logs in and places a food order, the order is transmitted electronically to the restaurant and to Defendant's drivers, who may choose to deliver the order. Mem. in Supp. Def.'s Mot. to Compel Arbitration ("Def.'s Mem."),

Decl. of Stanley Tang ("Tang Decl.") 1 [#6-1]. If a driver agrees to deliver the order, the driver must pick up the food and transport it to the customer. Id. at 2.

Plaintiff has worked for Defendant as a driver since October 2016. Compl. at ¶ 3. In order to do so, Plaintiff logged onto the mobile application and accepted an agreement that states, in relevant part:

> The Agreement ("Agreement") is made and entered into by and between you, the undersigned contractor ("CONTRACTOR") . . . and DoorDash, Inc. ("DOORDASH" or "COMPANY"). This Agreement will become effective on the date it is accepted regardless of whether you are eligible to, or ever do, perform any Contracted Services.

Tang Decl., Exh. B ("Agreement") 9 [#6-1]. On the same screen as the Agreement, the mobile application also presented a Mutual Arbitration Provision, which states in relevant part:

> CONTRACTOR and DOORDASH mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court. This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) ("FAA") and shall apply to any and all claims arising out of or relating to this Agreement[.]

Id. at 11.

Plaintiff alleges that drivers are paid a delivery fee for each delivery plus any tips they may receive from customers. Compl. at ¶ 13. However, drivers must pay for their own expenses, including expenses for their vehicle, gas, smartphone, and data plan. Id. at ¶ 14. Plaintiff alleges that during the week of May 29, 2017, his wages fell below Massachusetts' minimum wage of $11.00 per hour, after accounting for expenses he incurred. Id. at ¶ 15. Plaintiff filed the instant case. Defendant moved to dismiss and compel arbitration, citing the Mutual Arbitration Provision.

II. Analysis

At the outset of this litigation, the parties presented a number of issues of law that have since been resolved by decisions of the Supreme Court. Those issues included Plaintiff's contention that the Mutual Arbitration Provision's class and collective action waiver language violated the National Labor Relations Act ("NLRA"), see Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1632 (2018) (holding that class action waivers do not violate the NLRA); and Defendant's argument that an arbitrator, not the court, must resolve the initial question of arbitrability. See New Prime, Inc. v. Oliveira, 139 S. Ct. 532, 576 (2019) (holding that a court, not an arbitrator, should determine the applicability of the FAA).[1] The remaining issue for the court to resolve is whether the Agreement here is exempt from the FAA's coverage.

"The Federal Arbitration Act requires courts to enforce private arbitration agreements." New Prime, 139 S. Ct. at 536. "While a court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional." Id. at 537. Section 1 of the FAA provides that the statute "shall not apply to 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112 (2001) (quoting 9 U.S.C. § 1). Plaintiff argues that he falls within the FAA's exclusion for "any other class of workers engaged in foreign or interstate commerce" (the "residual clause"), and therefore the Agreement is exempt from the FAA. Defendant argues that Plaintiff is not "engaged in foreign or interstate commerce" and thus the FAA applies to the contract and the court must enforce the arbitration provision in accordance with the FAA.

---

[1] Defendant also reserved the argument that the exclusion from the FAA for certain contracts of employment (discussed below) covered employees only and did not cover independent contractor agreements. Def.'s Reply 5 n.5 [#22]. In New Prime, the Supreme Court held that the exclusion for certain "contracts of employment" removes both employer-employee contracts and contracts involving independent contractors from the FAA's coverage.

In Circuit City, the Supreme Court considered whether all employment contracts were excluded from the FAA's coverage by the residual clause in Section 1 or just those of transportation workers. The Court concluded that the residual clause "should be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it." Id. at 115. Further, the Court rejected the argument that the term "engaged in foreign or interstate commerce" served to expand the category of excluded workers to the "outer limits" of Congressional authority under the Commerce Clause. Id. at 115-18. The Court concluded that this section "exempts from the FAA only contracts of employment of transportation workers." Id. at 119.

The First Circuit has not yet wrestled with the question of which workers are transportation workers under the FAA. See, e.g., New Prime, 857 F.3d at 17 (noting that the employer did not dispute that the employee, whose work included driving a truck over state lines, was "a 'transportation worker' within the meaning of the § 1 exemption, as interpreted by Circuit City. Thus, we have no need to definitively decide that issue"). "Although several other circuit courts throughout the country have addressed the topic, little consensus has been realized." Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 483 (S.D.N.Y. 2008). A consensus has emerged, however, that "workers dedicated to the interstate shipment of physical goods" fall within the exemption. Id. In his recent opinion in Waithaka v. Amazon.com Inc., Judge Hillman carefully reviewed these cases:

> [D]rivers actually involved in the interstate transportation of physical goods ... have been found to be 'transportation workers' for purposes of the residuary exemption in Section 1 of the FAA." [Kowalewski, 590 F.Supp.2d at 484]; see also Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th Cir. 2005) ("Indisputably, if Lenz were a truck driver, he would be considered a transportation worker under § 1 of the FAA."); Palko v. Airborne Express, 372

4

> F.3d 588, 593-94 (3d Cir. 2004) (assuming that truck drivers fall within the scope of the exemption); Harden v. Roadway Package Sys., 249 F.3d 1137, 1140 (9th Cir. 2001) ("As a delivery driver ... Harden contracted to deliver packages 'throughout the United States, with connecting international service.' Thus, he engaged in interstate commerce that is exempt from the FAA."); Carr v. Transam Trucking, Inc., 2008 WL 1776435, at *2 (N.D. Tex. Apr. 14, 2008) ("Truck drivers, like plaintiff, are considered 'transportation workers' within the meaning of this exemption."); Veliz v. Cintas Corp., 2004 WL 2452851, at *5 (N.D. Cal. Apr. 5, 2014) ("The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate [commerce], such as [an] interstate truck driver whose primary function is to deliver mailing packages form one state into another.").

No. 18-cv-40150-TSH, 2019 WL 3938053, at *2 (D. Mass. Aug. 20, 2019), appeal docketed, No. 19-1848 (1st Cir. Aug. 20, 2019). As Judge Hillman further noted, while courts have held that physically transporting goods across state lines is a factor to be considered,

> it is not a necessary condition to the application of the residual exemption. See Palcko v. Airborne Express, Inc., 372 F.3d 588, 593-94 (3d Cir. 2004) ("[H]ad Congress intended the residual clause of the exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly."); Lenz v. Yellow Transp., Inc., 431 F.3d 348, 352 (8th Cir. 2005); Bacashihua v. United States Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988) (finding that the concern is "not whether the individual worker actual engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce"); Christie v. Loomis Armored US, Inc., 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011) ("[A]n employee need not actually transport goods across state lines to be part of a class of employees engaged in interstate commerce.").

Waithaka, 2019 WL 3938053, at *3. Judge Hillman found helpful, as does this court, the factors listed for consideration in Lenz. 431 F.3d at 348. There, the Eighth Circuit listed:

> first, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties.

5

Id. at 351.

Here, the first, sixth and eighth factors listed in Lenz weigh in favor of finding Plaintiff to be a transportation worker under the FAA, as he works as a driver, his vehicle is vital to Doordash's commercial enterprise, and there is a complete nexus between his duties as a delivery driver and the vehicle he uses in carrying out his duties. The court finds the fourth factor—whether Plaintiff supervises other transportation workers—irrelevant, for as in Waithaka, "this factor is meant to broaden the exemption to workers who do not directly engage in transporting goods" and thus "the inapplicability of the fourth factor to Plaintiff does not preclude finding he falls within the scope of the exemption." Waithaka, 2019 WL 3938053, at *4. The court also finds the fifth factor cuts neither for nor against the exclusion as "on demand" drivers did not exist at the time the FAA was enacted.

The second factor—whether the employee is directly responsible for transporting the goods in interstate commerce—goes against Plaintiff where he does not allege that he ever crosses state lines when working for Defendant. Cf. Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC, 702 F.3d 954, 957 (7th Cir. 2012) (holding that a party primarily engaged in local trucking who occasionally engages in interstate transport is a transportation worker under section 1 of the FAA). Nor has Plaintiff claimed here that drivers are offered routes that involve transporting meals across state lines.

Even then, a worker or even a class of workers does not need to drive across state lines in order to be engaged in interstate commerce. See Palcko v. Airborne Express, Inc., 372 F. 3d 588, 593-94 (3d Cir. 2004) ("had Congress intended the residual clause of the exemption to cover only those workers who physically transported goods across state lines, it would have phrased

the FAA's language accordingly"). Accordingly, the court turns to the next factor: whether the goods themselves that Plaintiff delivered were in interstate commerce.

Plaintiff argues that the prepared meals delivered by Plaintiff remain in the flow of interstate commerce because "the processing and transformation of the raw goods in the state in which they are ultimately delivered do not end their interstate journey." Pl.'s Br. 6 n.7 [#12]. Plaintiff also contends that, "[i]n any event, DoorDash drivers deliver prepared food as well as packaged goods, such as sodas and other products, that have traveled interstate and have not been altered in any way by the restaurant and thus are indisputably still in the flow of interstate commerce." Id.

The cases on which Plaintiff relies share a unifying theme that weighs against Plaintiff here: in each case the manufacturer of the good that travels in interstate commerce ultimately intended to see the good through to the final destination at issue. For example, in Glowacki v. Borden, Inc., the court found that milk that was enriched after crossing state lines, but before a distributor acquired it to deliver, was still in the stream of commerce because "its essential identity" was not altered. 420 F. Supp. 348, 353 (N.D. Ill. 1976). Of note there, the milk was moved from a manufacturer to a distributor hired by the manufacturer to distribute its product. The stream of commerce inquiry was directed at the transaction from the original interstate mover of the good, the manufacturer, to the manufacturer's intended placement of the good, with its distributor. Similarly, in Waithaka, the court held that last-mile delivery drivers were engaged in commerce because there was a "continuity of movement" of the goods that customers ordered from Amazon. Waithaka, 2019 WL 3938053, at *3 (citing Walling v. Jacksonville Paper Co., 317 U.S. 564, 568 (1943) (holding that goods remain in interstate commerce where there is a practical continuity of movement to the intended customers)). In that case, though, Amazon, the

entity providing the goods moving across state lines, intended for the goods to ultimately be delivered to customers, and the Plaintiffs were playing a part in the delivery of those goods. In contrast, here, although some of the food may be altered by the restaurants no more than the enriched milk in Glowacki, Plaintiff makes no allegation of a commercial connection between any interstate food distributor and the customers that receive prepared meals via Plaintiff's delivery. Similarly, Plaintiff makes no allegation of any tie between the out-of-state manufacturers of packaged goods and Defendant, such as allegations that a soft drink manufacturer intended to make its products available directly to consumers in their homes via Defendant's service and drivers. Instead, the final destinations from the vantage point of the interstate food distributors are the restaurant where Plaintiff picks ups orders, and not the customers to whom he makes deliveries.

While several of the Lenz factors weigh in favor of finding Plaintiff to be a transportation worker, others weigh against that finding. Reviewing these together, the court finds that Plaintiff is not a transportation worker exempted from the FAA. The court notes that the outcome of this case may well be different if a driver alleged that he crossed state lines to deliver goods, as might occur where a delivery driver is stationed close to a state's border. Similarly, the outcome of this inquiry may also be different for an on-demand driver who delivers groceries for a store that buys goods in interstate commerce. Such circumstances, however, are not alleged by Plaintiff. The court therefore concludes that Plaintiff is not a transportation worker exempted by section 1 of the FAA. Accordingly, the Arbitration Agreement must be enforced.

III.     Conclusion

For the forgoing reasons, Defendant's Motion to Dismiss and Compel Arbitration [#5] is ALLOWED.

IT IS SO ORDERED.

Date:   September 30, 2019                                              /s/ Indira Talwani
                                                                        United States District Judge